EDWIN JEROME *vs.* CHARLES SEYMOUR.

Where A. executes a mortgage to B. and then sells the mortgaged premises to C, subject to the mortgage, and under an agreement that C shall pay certain notes secured thereby, and B then executes to C. a quit claim deed of the mortgaged premises, the premises are discharged from the mortgage; and the effect is the same, where the mortgage has been assigned by the original mortgagee to a third person.

The bill in this case states that on the 20th December, 1836, Cyrus Shepherd executed to Horace R. Jerome two notes : one for $240 payable in one year, the other for $240 payable in two years; on the sixteenth January, he executed to said Jerome a mortgage to secure the notes.

That on the 2nd of April, 1838, Horace R. Jerome sold and assigned the notes and mortgage to complainant, for the consideration of $500. It then states that February 23rd, 1837, Charles Seymour purchased the mortgaged premises from Cyrus Shepherd, and they were conveyed, subject to the mortgage. That Seymour paid no consideration, except the notes and mortgage.

And complainant prays a statement of all the facts of the consideration. That immediately previous to the purchase, Shepherd, H. R. Jerome and Seymour were the joint owners, and they were jointly building a saw mill, After the sale, Seymour owned two-thirds, and H. R. Jerome one third, and they continued on with the work in 1837.

That Seymour, with intention to defraud H. R. Jerome, pretended to him that his deed of the mill property was defective, and desired said Jerome to make out a quit claim, for the purpose of correcting errors and without intending to affect the mortgage and deed executed February 27, 1837.

Complainant states that Seymour paid no consideration, and it was not supposed by said Jerome that deed would operate to release the mortgage, and that if Seymour procured the deed for such purpose, or supposed it would effect such purpose, he fraudulently concealed the same from said Horace. That Seymour, both, before and afterwards promised Jerome he would pay the notes, and in the fall of

1837, Seymour stated he had advanced more than his share towards the mill, and being so in advance, ought not to pay interest on said notes unless he had interest on the balance due him, and Seymour claimed a written stipulation, which Horace then gave him, not to charge interest, in case Seymour paid said notes within some time there stated. The terms of said stipulation are demanded by said bill.

Complainant charges there is no balance due Seymour from Horace Jerome, independent of said notes ; but that on the contrary, Horace R. Jerome claims a balance due from Seymour. In case Seymour ; claims a balance to set off against the notes, complainant offers to submit the matter to a Master to state the accounts, and in such case prays that said Horace may be made a party. Complainant also states that in the winter of 1838 he attempted to settle with Seymour, accounts were exhibited and Seymour examined and took a statement of the same, that he did not dispute his liability to pay the notes, but claimed he had a stipulation or agreement from Horace R. which exempted him from interest.

That he attempted again to settle in the winter or spring of 1838, as the agent of Horace, and the accounts were looked over at the house of complainant in Detroit, that the notes were talked of and admitted as a subsisting claim.

Complainant charges that both before, and after the transfer of said notes and mortgage, Seymour has frequently admitted to complainant his liability to pay the notes, that Shepard, the maker, is insolvent, and a resident of the state of New York.

The defendant admits the indebtedness of Cyrus Shepard to Horace Jerome as stated in the bill. Admits giving the mortgage to secure the debt, also the acknowledging and recording, and that the same was for purchase money.

Admits that complainant holds the assignment of the notes and mortgage, but *denies* that the same were assigned on the day stated, and *denies* that $500 or any other sum was paid for the assignment. For answer says he was informed by the complainant that the notes and mortgage were given to him in the winter or spring of 1837, as agent to settle ; therefore denies that complainant was ever the *bona fide* assignee.

Admits that said mortgage was on record at the time he bought out

Cyrus Shepard, and that Shepard gave him a deed; but *denies* the

same was subject to the payment of the mortgage, but states that such conveyance was in terms, full and entire.

Admits that at the time of the purchase made of Shepard, he had knowledge of the notes and mortgage. He also admits he agreed to pay the mortgage, which agreement is in writing.

Denies that the agreement with Shepard to pay said notes and mortgage constituted the whole or a considerable portion of the consideration, but that he paid him some $1600 in money and property *besides*. States that before the agreement to buy out Shepard a copartnership was formed, to wit, on the 20th day of December, 1836, between Cyrus Shepard, Seymour and H. R. Jerome, which was in writing, one provision of which was that Seymour and H. R. Jerome, should furnish each one half of the means to erect a saw mill and dam, and reim burse themselves from the earnings.

It being understood that the description of the premises was defective, it was agreed if Seymour would buy out Shepard, Jerome would give a conveyance that was correct. About February 23, 1837, he did purchase Shepards' interest, and received a conveyance; sets out the consideration and refers to the agreement in writing.

Admits that immediately previous to buying out Shepard all three were joint owners and engaged in putting up the mill, and after the purchase, defendant owned two-thirds and H. R. Jerome one third, and that defendant and Horace R. continued their work through 1837.

That after the purchase it was proposed by said Jerome that new articles of agreement should be made, by which defendant should be obligated to advance according to his interest, this the defendant declined to do, but still proposed if H. R. Jerome would release the mortgage so that the property would be clear &c., he would enter into such agreement; this was agreed to, and thereupon the copartnership agreement was made.

That on the same day in pursuance of the original agreement and in consideration that said defendant had entered into the agreement by which he bound himself to pay two-thirds of the expenses, and for the further consideration in said deed expressed; the said H. R. Jerome on the 27th day of February, 1837, by deed signed by himself and

First Circuit. wife quit claimed two-thirds of mill property to defendant, and the
deed was acknowledged and recorded, and then in defendants custody.

Jerome.
vs.
Seymour. Defendant admits the prior deeds were defective, also, that he paid to
the said Horace R. Jerome no pecuniary consideration for the execution
thereof; that one object of the quit claim was to correct the error.
But *denies* all fraud, denies that the *main* object was to correct the er-
ror, but states the main object was to have the premises discharged
from incumbrances, and Horace R. Jerome designed and intended in
executing the quit claim deed to discharge the mortgage.

Admits he promised H. R. Jerome he would pay the notes both be-
fore and after quit claim deed.

Admits in November, 1837, he had an interview with H. R. Je-
rome at Flint concerning note and advances in which defendant claim-
ed he had advanced more than his share which said Horace R. admit-
ted, and desired defendant to take said two notes and pass to his cred-
it, but neither of said notes being due and defendant wanting cash de-
clined, saying they might come in after due. But finding he could
get no money agreed to take one, afterwards it was found the notes
were at St. Clair. Then concluded to take both and apply them in
the manner proposed, and drew upon the back of the statement of ad-
vances an agreement on the part of H. R. Jerome, to deliver both
notes, which was signed by H. R. Jerome. Defendant denies any
such stipulation in relation to said notes as stated in the bill, made at
any time. That after the above interview he went on in 1838 and
made further advances, and by the winter of 1839 completed the mill
and dam, and claims a large balance against H. R. Jerome over and
above said two notes, and in addition a large stipulation contained in
the agreement. Claims complainant has no right to bring him into
court to compel a settlement of accounts with a person not a party
to the suit.

E. C. SEAMAN for Complainant.

LEE HALE & HARDING, for Defendant.

THE CHANCELLOR.—From the statements contained in the answer
I think there is a good reason to doubt the allegation that the com-
plainant is the *bona fide* holder of the notes and mortgage in ques-
tion.

I should rather be inclined to the belief that he was acting in the capacity in which he led the defendant to believe he was ac- ting until a short time before the commencement of the suit, merely as the agent and attorney of Horace R. Jerome.   But admitting him to be the actual holder of these papers, how would the case stand ? as between the complainant and defendant the present complainant can have no greater equity as agent of this defendant than could his assignor H. R. Jerome.

That the property upon which the mortgage was based was discharged by the quit claim, I entertain no doubt, that it was the mutual understanding and intention of the parties that such should be the operation and effect of the deed, must be conceded.   The effort then to subject the land to the payment of the mortgage is out of the question.

But it is said that as a part of the purchase money to an amount equal to the notes remaining is in the hands of the defendant, the court should treat this as a trust fund and enforce payment out of this to the present complainant.   Shepard the grantor of the defendant is not a party in this suit.

It is true the defendant admits that he promised it the time of the purchase to Shepard, to pay these notes then in the hands of Horace R. Jerome, the assignor of the complainant.

In the course of their mutual dealings as copartners it was expressly agreed in writing that these notes should be credited to Horace R. Jerome and charged to the defendant in consideration of advances made by the defendant to the said co-partnership.

The agreement is in these words :   " I am to deliver to Charles " Seymour the two notes I hold against Cyrus Shepard for $240 each, " and charge them against the balance he may have furnished for " the mill over his share without interest.      H. R. JEROME. "

It is averred that the advances were made to an amount greater than the notes.

How then can this complainant, standing in the place of Horace R. Jerome, be entitled to a decree ?   If the notes which the mortgage was given to secure, were the notes of the present defendant negotiable, and negotiated before due, the defendant would of course

First Circuit have been liable upon them in the hands of the holder.   But they
are not the notes of this defendant but of Shepard.   The promise to
take them up was made to Shepard while they were in the hands of
H. R. Jerome, his partner.

Jerome.
vs.
Seymour.

According to the answer, which for this purpose must be taken as
true, they were actually paid.   Shepard is not a party to this suit,
and it is not proper or necessary in this stage of the proceedings to
decide what may be the equity between him and Seymour, but it is
quite certain as the case now stands the present complainant is not
entitled to a decree against the defendant upon these notes.

I have had some hesitation as to what order to make.   Whether
to direct the notes and mortgage to be cancelled, or to permit the
cause to stand over with leave to make Horace R. Jerome a party
with the view to a settlement of the account for advances made by
Seymour as stated in his answer, which it was stipulated should ap-
ply in payment of these notes.   The latter perhaps may be the safer
course and cannot prejudice the rights of either party.   Let the or-
der be entered accordingly.